UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

YASIN S. HUSSAIN,

                                        Plaintiff,

                -vs-

                                                        07-CV-210C

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                                        Defendant.

───────────────────────────────────────


        Plaintiff Yasin Hussain initiated this action pursuant to section 405(g) of the Social

Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of

Social Security (the "Commissioner") denying plaintiff's application for Social Security

Disability Insurance benefits.  The Commissioner has filed a motion for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Item 5), and

plaintiff has filed a cross motion requesting the same relief (Item 9).  For the following

reasons, the Commissioner's motion is denied, the plaintiff's cross motion is granted, and

the case is remanded.


## BACKGROUND

        Plaintiff was born on October 13, 1974 (Tr. 54).[2]  He applied for disability benefits

on September 2, 2004, alleging disability as of March 14, 2004 (Tr. 39-41) due to residual

───────────────────────

[1]

Michael J. Astrue became the Commissioner of Social Security on February 12, 2007 and is thus substituted
for former Commissioner Jo Anne Barnhart as defendant in this case.  *See* Fed. R. Civ. P. 25(d)(1); 42
U.S.C. 405(g).

        [2]References preceded by "Tr." are to page numbers of the transcript of the administrative record,
filed by defendant as part of the answer to the complaint (Item 3).

pain from an automobile accident on June 27, 2004.[3]  Plaintiff's application was denied initially on December 24, 2004 (Tr. 29-32).  Plaintiff then requested a hearing, which was held by video on June 22, 2006 before Administrative Law Judge ("ALJ") Norma Cannon (Tr. 239-67).  Plaintiff testified at the hearing and was represented by counsel.  In addition, Larry Bell, a vocational expert ("VE"), testified at the hearing.

By decision dated September 19, 2006, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 14-22).  The ALJ's decision became the Commissioner's final determination on March 1, 2007, when the Appeals Council denied plaintiff's request for review (Tr. 4-6).

Plaintiff then filed this action on March 29, 2007 (Item 1), pursuant to the judicial review provision of 42 U.S.C. § 405(g).  On October 1, 2007, the Commissioner filed a motion for judgment on the pleadings on the ground that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 5).  On November 5, 2007, plaintiff filed a cross motion for the same relief, arguing that the Commissioner erred in finding him not disabled (Item 9).  The Commissioner filed a reply memorandum on December 1, 2007 (Item 12).

## DISCUSSION

## I.    Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "the findings of the Commissioner . . . as to any fact, if supported by substantial

---

[3]  By stipulation of plaintiff and his attorney, the alleged onset date was amended at the hearing to June 27, 2004 (Tr. 16).

evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined

as evidence which "a reasonable mind might accept as adequate to support a conclusion."

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v.

Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir.

1999).  Under these standards, the scope of judicial review of the Commissioner's decision

is limited, and the reviewing court may not try a case *de novo* or substitute its findings for

those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether

the record, read as a whole, yields such evidence as would allow a reasonable mind to

accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d

639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y.

February 14, 2000).

However, "before the insulation of the substantial evidence test comes into play, it

must first be determined that the facts of a particular case have been evaluated in light of

correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976),

*quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680

(E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based

on an erroneous view of the law that improperly disregards highly probative evidence.

*Tejada*, 167 F.3d at 773.

## II.    Standard for Determining Eligibility for Disability Benefits

To be eligible for disability insurance benefits under the Social Security Act, plaintiff

must show that he suffers from a medically determinable physical or mental impairment

"which can be expected to result in death or which has lasted or can be expected to last

3

for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).  The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts

4

to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The Commissioner ordinarily meets his burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpart P, App. 2 (the "Grids").[4]  However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of his disability (Tr. 16).  Upon review of plaintiff's medical records and hearing testimony, the ALJ found plaintiff's impairments–osteoarthritis, disc herniation, and status post pelvic/hip fractures–to be severe,  but not of sufficient severity to meet or equal any of the impairments in the Listings (Tr. 19).  The ALJ then determined that plaintiff could not perform his past relevant work as a driver, fast food worker, or security guard (Tr. 20).   At step four of the evaluation process, the ALJ determined that plaintiff's residual functional capacity allowed him to engage in a wide range of work activities at the light/sedentary exertional level with the limitation that he be allowed to change positions as needed  (Tr. 19).  The ALJ agreed with the Physical Residual Functional Capacity Assessment dated December 24, 2004 by  a state consultant, who reviewed plaintiff's medical records and determined that plaintiff was

---

[4]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in substantial gainful work existing in the nation economy.  *See Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

able to lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk and sit about 6 hours in a workday, and push and pull without limitation (Tr. 189).

Proceeding to the fifth step of the sequential analysis, the ALJ considered the testimony of the vocational expert, the plaintiff's age (29 years old at the onset of the alleged disability), his high school education, his work experience, and his residual functional capacity (as described above), and determined that the plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (Tr. 21).  Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act at any time from the alleged onset date to the date of the decision (Tr. 21-22).

Plaintiff contends that this determination is not supported by substantial evidence because the ALJ rejected the opinion of consultative neurological examiner Dr. Nikita Dave, failed to give controlling weight to the opinions of plaintiff's treating physicians, and committed other errors which deprived plaintiff of a fair hearing.  For the reasons that follow, the court finds that the ALJ erred in her consideration of the opinions of plaintiff's treating physicians.  Accordingly, the Commissioner's motion is denied, the plaintiff's cross motion is granted, and the case is remanded for further proceedings consistent with this opinion.

### III.    The Treating Physicians' Opinions

Plaintiff was injured in a motor vehicle accident on June 27, 2004 and was hospitalized at the Erie County Medical Center for approximately nine days.  He suffered pelvic and rib fractures which did not require surgery.  Following his discharge, plaintiff

treated with Dr. William Capicotto, an orthopedic surgeon.  At an initial examination on October 12, 2004, Dr. Capicotto found that plaintiff had tenderness of his spine, walked with a limp, had a reduced lumbar range of motion, and straight leg raising was to 90 degrees with pain (Tr. 162).  Dr. Capicotto opined that plaintiff was totally disabled.  In December 2004, magnetic resonance imaging indicated a disc herniation at L4-5 (Tr. 195). Although Dr. Capicotto found continuing lumbar spine tenderness and reduced range of motion of the cervical spine, in January 2005, plaintiff reported improvement with pain medication and physical therapy (Tr. 226).  In June 2005, Dr. Capicotto found that plaintiff showed "mild improvement" (Tr. 205).  He suffered pain in the neck, low back, and pelvic area.  *Id.*  Examination of the spine showed tenderness at C4-7, L4-5, and S1.  Lumbar flexion was limited and heel-toe walking was with difficulty (Tr. 205-06).  Through June 2005, Dr. Capicotto opined that plaintiff was totally disabled (Tr. 206).

In September 2005, plaintiff began treating with physiatrist Dr. Andrew Matteliano. In December 2005, plaintiff complained of low back and pelvic pain.  Dr. Matteliano noted reduced cervical and lumbar range of motion with pain and tenderness.  He treated plaintiff with Lidoderm patches and physical therapy (Tr. 230).  In April 2006, plaintiff continued to suffer low back and pelvic pain, with stiffness and spasm in the low back.  Dr. Matteliano opined that plaintiff was totally disabled (Tr. 228).

The ALJ gave the opinions of Drs. Capicotto and Matteliano as to plaintiff's disability little weight, "as not being supported by the objective medical and radiographic evidence" (Tr. 18, 19).  Additionally, the ALJ noted that the decision as to a claimant's disability is reserved to the Commissioner. *Id.*

7

The Social Security Regulations require that the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79.  If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the Regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. § 404.1527(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion."  *Rosa*, 168 F.3d at 79 (internal quotation omitted); *see also Rooney v. Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. August 14, 2001).

As explained by the Social Security Administration, when the ALJ's determination:

> is not fully favorable, *e.g.*, is a denial . . .[,] the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

Here, the ALJ did not acknowledge the treating physician rule or adequately explain how it applied to this case. *See Tornatore v. Barnhart*, 2006 WL 3714649, *3 (S.D.N.Y. December 12, 2006) (ALJ did not comply with Regulations where it was unclear whether he considered the required factors). While the ALJ stated that she gave "appropriate weight" to the treating physicians' opinions as to plaintiff's "physical impairments and complaints," it is unclear whether, in determining precisely what weight to give Dr. Capicotto's and Dr. Matteliano's opinions, the ALJ considered such factors as "the frequency of examination," the "length, nature and extent of the treatment relationship," and the fact that Dr. Capicotto is an orthopedic specialist. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ's primary rationale for rejecting the treating physicians' opinions is that they were not supported by the objective medical and radiographic evidence in the record (Tr. 18, 19). However, plaintiff suffered numerous fractures and a disc herniation, all of which were confirmed by radiographic evidence. It cannot be said that the ALJ has complied with the regulations and case law requiring her to "comprehensively set forth reasons for the weight assigned" to the opinions of Drs. Capicotto and Matteliano. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see* 20 C.F.R. § 404.1527(d)(2). Accordingly, a remand is necessary to properly assess the opinions of the treating physicians.

## IV.  The Opinion of the Consultative Physician

Plaintiff saw Dr. Nikita Dave, a consulting physician, on July 13, 2006 for a neurological examination at the request of ALJ Cannon. At the conclusion of the hearing, the ALJ stated that she would send plaintiff to a neurologist, not because she was ignoring the opinions of plaintiff's treating physicians but because she wanted a medical opinion of

9

plaintiff's symptoms from a "different perspective" (Tr. 266).  In the report, Dr. Dave stated that as a result of the motor vehicle accident of June 2004, plaintiff suffered a lacerated spleen, pelvic, sacrum, vertebral, and rib fractures, and a disc herniation at L4-5.   He complained of low back pain with radiation to the lower left extremity, numbness, spasms and cramps (Tr. 232-33).  Plaintiff also complained of neck pain, pelvic pain with radiation in the groin and testicles, headaches, and panic when driving (Tr. 234).  Dr. Dave noted a mildly antalgic station and gait, difficulty in heel-toe walking, decreased range of motion in the cervical and lumbar spine, and tenderness and swelling of the cervical, lumbar and thoracic spine (Tr. 236).  Dr. Dave also noted decreased sensation in the left arm which was confirmed by sensory testing (Tr. 237).  Dr. Dave concluded that plaintiff had moderate to severe limitations for repetitive lifting, bending, pushing, pulling, prolonged sitting, ambulation, and stair climbing (Tr. 238).  Dr. Dave also noted moderate limitations for cervical mobility and the ability to maintain static cervical position, rapid change in position, lifting, and carrying.  Given plaintiff's panic symptoms, Dr. Dave stated that a psychiatric evaluation may be warranted. *Id.*

The ALJ stated that she gave "appropriate weight" to the examination of Dr. Dave, but noted that plaintiff's complaints of pain "were based primarily on the claimant's subjective statements" (Tr. 19).  The ALJ also stated that "there were no other objective medical source reports or opinions to support the degree of alleged severity of the claimant's symptoms" and no reports that plaintiff's "condition had significantly worsened after he had made good progress in the healing process . . .." *Id.*

Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. Dave, as the medical reports of plaintiff's treating physicians, Drs. Matteliano and Capicotto, supported

10

the degree of alleged severity. The ALJ also apparently discounted the opinion of Dr. Dave because it was "based primarily on the claimant's subjective statements" (Tr. 19). However, Dr. Dave's reliance on plaintiff's subjective complaints does not undermine the opinion, as a patient's report of symptoms is "an essential diagnostic tool." *See Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2[d] Cir. 2003) (quoting *Flanery v. Chater,* 112 F.3d 346, 350 (8th Cir. 1997)). "[S]ubjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence." *Goldthrite v. Astrue,* 535 F.Supp. 2d 329, 337 (W.D.N.Y. 2008) (quoting *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979)). It is unclear how much weight the ALJ gave to the opinion of Dr. Dave, but the Regulations require that more weight be given to the opinion of a medical source who has examined the plaintiff than to the opinion of one who has not. *See* 20 C.F.R. § 404.1527(d)(1). Upon remand, the ALJ should reassess the opinion of Dr. Dave and afford it the appropriate weight, as it is consistent with the opinions of plaintiff's treating physicians.

## V.  Other Errors

Plaintiff also argues that the ALJ committed other errors which deprived him of a fair hearing. Specifically, he contends that his impairments equal section 1.04A of the Listings. He also complains that the ALJ did not accurately describe the testimony of the VE and failed to mention plaintiff's L4 fracture. The plaintiff also argues that the Commissioner, in his memorandum of law in support of the motion, erred in referring to Dr. John O'Donnell as a consultative examiner and misstated the reports of plaintiff's physical therapist.

None of these alleged errors requires reversal or remand.  Plaintiff admits that his injuries do not satisfy the requirements of section1.04A of the Listings in that there is no medical evidence of nerve root compression.  Additionally, it was not error for the ALJ to omit mention of plaintiff's L4 fracture, as the ALJ is not required to explicitly set forth and analyze every piece of evidence in the record.  *See Monguer v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983).  Likewise, the ALJ is not required to accept the testimony of the VE based on a hypothetical that includes symptoms or limitations which the ALJ has rejected. *See Dumas v. Schweiker,* 712 F.2d 1545, 1554 n.4 (2d Cir. 1983).  Here, the ALJ reasonably rejected plaintiff's testimony that, approximately three times per week, he is required to recline for more than half the day (Tr. 259).  Accordingly, the ALJ was not required to accept the VE's testimony that such symptoms would preclude all gainful employment and render plaintiff disabled.

Additionally, plaintiff was not denied a fair hearing by the reference in the Commissioner's memorandum of law to Dr. John O'Donnell as a consultative examiner. Dr. O'Donnell is an orthopedic surgeon who performed an independent medical examination ("IME") at the request of an insurance company.  Generally, a physician who performs an IME is referred to as a consultative examiner.  There is no indication that the ALJ's reliance on Dr. O'Donnell's opinion was improper.  Additionally, the plaintiff was not denied a fair hearing by the Government's characterization of the medical report from plaintiff's physical therapist, Brian Glover.  While the Commissioner states that the ALJ's RFC finding is supported by the reports of the therapist (Item 6, p.19), a medical source RFC assessment completed by Brian Glover on November 15, 2005 indicates an inability to do light work (Tr. 220-23).   A physical therapist is a medical source who may offer

evidence to show the plaintiff's impairment and the ability to work, but such medical sources are not "acceptable medical sources" under the Regulations. *See* 20 C.F.R. §§ 404.1513(a), (d). Thus, Glover is not considered a treating physician and the ALJ was not required to give his report controlling weight.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 5) is denied, and the plaintiff's cross motion (Item 9) is granted. The case is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   October   23        , 2008
p:\opinions\07-210.sep2608